NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

METROPOLITAN MILLWORK, INC.,
Respondent.

No. 31, Docket 28054.

United States Court of Appeals
Second Circuit.

Argued Nov. 8, 1963.

Decided Dec. 30, 1963.

Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Warren M. Davison, Robert A. Armstrong, Attorneys, National Labor Relations Board, for petitioner.

Martin I. Rose, New York City, for respondent.

Before WATERMAN, MOORE and SMITH, Circuit Judges.

WATERMAN, Circuit Judge.

This case comes before us on a petition of the National Labor Relations Board, pursuant to section 10(e) of the National Labor Relations Act, as amended, 29 U.S.C. § 160(e), for enforcement of its order issued against respondent, Metropolitan Millwork, Inc. The order was issued on the basis of the Board's findings that the respondent had committed unfair labor practices in violation of Sections 8(a) (1), 8(a) (2) and 8(a) (3) of the Act, 29 U.S.C. §§ 158(a) (1), 158 (a) (2), 158(a) (3). The Board adopted with some modification the findings, conclusions and recommendations of the Trial Examiner who originally heard the case; and his Intermediate Report and Recommended Order, reciting in detail the facts of this case, are attached to the Board's decision, reported at 138 NLRB 1482.

Respondent, in defending against the Board's petition for enforcement, does not deny that it was guilty of acts which would ordinarily constitute the above mentioned unfair labor practices, and there is more than enough evidence in the record to support the Board's conclusion that such acts were committed. Rather, respondent argues that the conduct it engaged in was in reply to a strike which was an unprotected one because the striking union failed to satisfy the

requirements of Section 8(d) of the Act, 29 U.S.C. § 158(d).

Section 8(d), after defining the duty to bargain, provides:

"That where there is in effect a collective-bargaining contract covering employees in an industry affecting commerce, the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination or modification—

"(1) serves a written notice upon the other party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof, or in the event such contract contains no expiration date, sixty days prior to the time it is proposed to make such termination or modification;

"(2) offers to meet and confer with the other party for the purpose of negotiating a new contract or a contract containing the proposed modification;

"(3) notifies the Federal Mediation and Conciliation Service within thirty days after such notice of the existence of a dispute, and simultaneously therewith notifies any State or Territorial agency established to mediate and conciliate disputes within the State or Territory where the dispute occurred, provided no agreement has been reached by that time; and

"(4) continues in full force and effect, without resorting to strike or lock-out, all the terms and conditions of the existing contract for a period of sixty days after such notice is given or until the expiration date of such contract, whichever occurs later:

" * * * Any employee who engages in a strike within the sixty-day period specified in this subsection shall lose his status as an employee of the employer engaged in the particular labor dispute, for the purposes of sections 8, 9, and 10 of this Act, as amended, but such loss of status for such employee shall terminate if and when he is reemployed by such employer."

Despite the contentions of the respondent we find substantial evidence in the record to support the Board's finding that the striking union complied with Section 8(d).

In brief the facts follow:

The respondent and Local 282, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, entered into a collective bargaining contract for the term of two years from July 1, 1959 to June 30, 1961. The contract was negotiated with Local 282 by the New York Lumber Trade Association, Inc. (hereinafter Association) which represented respondent along with about 75 other employers. Although respondent and each of the other employers, at the union's insistence, signed individual contracts with the union identical to the one signed by the Association's representative, there is no doubt that the Association bargained with Local 282 as agent for respondent and the other employer members of the Association.

In April of 1961, well in advance of the 60 day notice period required by Section 8(d), the Association and Local 282 notified each other of the approaching termination of the contract, and each gave written notice to the appropriate Federal and State authorities. On June 9 the respondent by letter informed Local 282 that it had authorized the Association to bargain for it. On July 19, however, while negotiations between Local 282 and the Association were in progress, the respondent wrote to the union informing it that respondent was withdrawing its authorization to the Association and was planning to bargain with Local 282 by itself. By October 10 no new contract had been agreed upon and Local 282's employees at respondent's plant went out on strike.

We have no doubt that Local 282's notice to the mediation authorities in

 

April completely fulfilled any obligations Section 8(d) (3) imposed on the union at that time. Respondent argues, however, that after Local 282 had been informed of respondent's decision to negotiate on an individual basis, the union was bound under Section 8(d) (3) to notify these same authorities that it had an individual dispute with respondent. We do not agree. When Local 282 gave timely notice to the authorities of a dispute between it and the Association, the Association represented respondent and 75 other employers and had negotiated the contract then existing. The mediation authorities were therefore put on notice of a dispute between Local 282 and all of the employers who had negotiated their contract with the union through the Association. When respondent thereafter chose to bargain on an individual basis no new notice was required. Whatever the motivations were that impelled respondent to forsake its bargaining agent and to begin bargaining on an individual basis, it could not legitimately expect to gain another period of grace from work interruption on the theory that a new notice had to be transmitted to the mediation authorities.

Respondent also argues that the notice the union gave the Association in April was defective under Section 8(d) (1) because it failed to spell out an intent to modify or terminate the existing contract. It is true that the Trial Examiner, whose findings were adopted by the Board with minor modifications, referred to the union's notice and did not specifically state that it evinced an intent to modify or to terminate. Necessary to the decision below, however, was a finding that the appropriate notice *had* been given, and there is nothing in the record which indicates the contrary. Indeed, what there is in the record supports a finding that full notice was given. Both the Association and the union, after exchanging notices, gave further notice to Federal and State mediation authorities, thereby indicating a mutual awareness of the need for negotiations looking toward the formulation of a new contract.

Respondent offered no evidence below tending to show any inadequacy in this notice, and belatedly raises this argument for the first time in this court. We find no merit therein.

The petition of the Board is granted.